UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JEMEL NORMAN                                    Case 1:10-cv-05923-ERK -SMG

               Plaintiffs,                     **AMENDED COMPLAINT**

       -against-

THE CITY OF NEW YORK,                           **JURY TRIAL DEMANDED**
POLICE OFFICER CHRISTOPHER CARITA,
SERGEANT MARK JABLONSKI, Shield No. 3353
POLICE OFFICER KEVIN DEVINE, Shield No. 8234
and SERGEANT SCOTT KIENLE, Shield No. 536

               Defendants.
----------------------------------------------------------x


Plaintiff, JEMEL NORMAN, by his Attorneys, OFODILE & ASSOCIATES, P.C.,

complaining of the Defendants – the CITY OF NEW YORK (hereinafter also referred to as

"City"), POLICE OFFICER CHRISTOPHER CARITA, SERGEANT MARK JABLONSKI,

Shield No. 3353, POLICE OFFICER KEVIN DEVINE, Shield No. 8234 and SERGEANT

SCOTT KIENLE, Shield No. 536 , upon  information and belief, alleges as follows:


## NATURE OF ACTION

1.     This is an action at law to redress the false arrest, false imprisonment and

malicious prosecution, and violation of Plaintiff's right to privacy, against City of New York and

its agents at New York Police Department that caused Plaintiff loss of freedom, significant

financial loss, as well as emotional and mental distress.


1

2.     This is also an action to redress the pain and suffering and psychological injuries sustained by Plaintiff as a result of the intentional, malicious, careless, and negligent acts of the City of New York, and some of its Police Officers.

## JURISDICTION AND VENUE

3.     Jurisdiction is specifically conferred on the United States District Court by 28 U.S.C. § 1331, this being an action arising under the Constitution and Federal Law, and by 28 U.S.C. § 1343(a)(3), this being an action authorized by law to redress the deprivation, under color of statute, ordinance, regulation, custom or usage, of rights, privileges, and immunities secured to Plaintiff by the Constitution, and by 42 U.S.C. § 1983.

4.     Venue is proper because the events complained of occurred in the County of Kings, which is in the Eastern District of New York.

## PARTIES

5.     During all times relevant and material to this Complaint, Plaintiff Jemel Norman Thomas was a citizen of the United States residing in Far Rockaway, Queens County, New York, within the jurisdiction of this Court.

6.     During all times relevant and material to this case, Defendant City of New York was a municipal corporation incorporated under the laws of the State of New York.

7.      During all times relevant and material to this case, Defendants, Police Officer

Christopher Carita, Sergeant Mark Jablonski, Shield No. 3353, Police Officer Kevin Devine,

Shield No. 8234 and Sergeant Scott Kienle, Shield No. 536, were employed by Defendant City of

New York through its Police Department.


8.      During all times relevant and material to this case, the actions of Defendants,

Police Officer Christopher Carita, Sergeant Mark Jablonski, Shield No. 3353, Police Officer

Kevin Devine, Shield No. 8234 and Sergeant Scott Kienle, Shield No. 536, complained of herein

were done as part of the custom, practice, usage, regulation of the City of New York, and/or

failure to train, supervise and discipline and Defendant City is as such responsible for the actions

of these individual Defendants under the constitution.


**FACTS COMMON TO ALL CAUSES OF ACTION**

9.      On September 22, 2008, at or about 8:30pm at Flatbush East around New York

Avenue and one block from the 67th Precinct, Plaintiff was the driver of a car that was pulled up

while waiting for someone to come into the car. At the time this person was coming into the car,

there were Police Detectives driving in the opposite direction.


10.     The detectives stopped, opened the driver's door of the car where Plaintiff was

and asked Plaintiff to step out. They opened the back seat door and asked the passenger at the

back if he had anything on him. He said no and then said yes and gave them the 7grams of

marijuana he had in the palm of his hand that he was about to wrap up and smoke.

11.     Thereafter, one of the Detectives took Plaintiff and the two passengers to the back of the vehicle and while the occupants of the care were at the back of the vehicle, one Detective pushed the back seat backwards to open the trunk. After opening the trunk of the vehicle, the Detective then looked into the trunk, nodded at the other two Officers who immediately placed Plaintiff and the other two passengers under arrest.

12.     Plaintiff and the two passengers asked why they were being arrested, the Officers did not respond but rather separated the arrested persons. Police Officer Christopher Carita then asked Plaintiff if anything in the car was his and Plaintiff responded "No". He then took Plaintiff to the 67th Precinct, booked him and the others, and told them the gun was fake - an 8mm prop gun, that he was 99% sure it belonged to the passenger who had been in the back seat, and that they would all be going home that night.

13. The gun in the trunk of the car was a prop gun. It was obvious to the Police Defendants that it was a prop gun and not a firearm within the meaning of the New York State Penal Code. The Defendants knew at the scene of the arrest of Plaintiff and the other two passengers that it was a prop gun because it was obvious to the Defendants that it was not a firearm within the meaning of the law, Defendants admitted to Plaintiff and other passengers at the scene of the arrest that it was a prop-gun and that they new it was a prop-gun but went on to arrest Plaintiff and others for gun possession and even falsely claimed in their arrest report that the gun was actually a loaded firearm when they knew it was a prop gun, inoperable and incapable of firing bullets.

4

14.   The prop gun in question did not have a hole from where bullets could be fired and had a red/orange cap in the hole where bullets were supposed to be fired from and by federal regulation is what is used to easily distinguish toy guns from real guns so that in real life situations toy guns are not confused or mistaken for real ones.

15.   It was obvious to any person taking a look at the "gun" that it was a toy gun and as trained police officers, defendants could not reasonably have mistaken the prop/toy gun for real ones. Furthermore, it was an 8mm gun and, upon information and belief, there are no real 8mm guns and the closest real guns are 9mm guns. These obvious characteristics of toy guns were easily observable and observed by Defendants and that is why at the scene Defendants declared that they were 99.9% sure that the gun was a toy gun and told Plaintiffs that they would be let go at the Precinct.

16.   The Defendants knew that the toy gun in the trunk of the car did not even belong to Plaintiff and admitted same, yet they charged Plaintiff with gun possession.

17.   Plaintiff was kept in the Precinct for 18 hours and then escorted to Central Booking from where he was taken to Court on September 24, 2008 around 2pm. Plaintiff was charged with C Felony. He was then taken to Rikers Island C.F. and was in waiting for a bed and medical for 18 hours.

18.    Plaintiff was strip searched twice in Rikers Island - on arrival and at his

departure on September 30, 2008. Plaintiff was also strip searched at Central Booking in

Brooklyn.


19.    Upon information and belief, The Grand Jury did not indict Plaintiff on the

charges preferred against him by the Defendants and when Plaintiff appeared in Court on

October 8, 2008,  the Judge dismissed the charges against him. Plaintiff was incarcerated for

eight days as a result of this arrest.


20.  There was no reason to stop Plaintiff or others in the vehicle nor was there a reason

to question them. The individual in the back seat of the vehicle was already seated before the

police came to question the occupants of the vehicle and they were very close and within sight of

the Precinct and the police could not have suspected that any crime was being committed or

about to be committed in the circumstances.


21.   When the  passenger in back of the vehicle opened his palm and showed the police

the marijuana he was about to wrap up and smoke, none of the occupants of the vehicle did

anything to suggest to the police that the vehicle should searched and the police did not observe

or witness any thing suggesting that the vehicle needed further searching.

22.    Defendant Police Officers intentionally and gratuitously opened the trunk of the vehicle and searched same by removing the occupants of the vehicle, taking aside the backseat divider, and then opening the trunk through the back seat.

23.    The actions of the Defendants were callous, intentional and done deliberately to violate Plaintiff's constitutional rights because they knew that the gun was a prop gun at the scene, admitted that they  knew that it was a prop gun and its possession was not a crime, but in order to pad their arrest records, they charged Plaintiff and others with possession of a loaded 8mm automatic gun, a felony that necessitated the incarceration of Plaintiff for eight days and maliciously prosecuted him.

24.    Plaintiff suffered from serious emotional and mental distress as a result of the incidents that form the basis of this claim. Plaintiff has suffered from, among other things, fright, shock, humiliation, unhappiness, and depression. Plaintiff also suffered from, is still suffering from and will continue to sustain serious pecuniary damages as a result.

### AS FOR A FIRST CAUSE OF ACTION

25.    Plaintiff repeats and realleges paragraphs 1 through 24 as if each paragraph is repeated verbatim herein.

26.     Plaintiff was arrested and imprisoned without probable cause in violation of

his right not be arrested without probable cause as guaranteed to him by the 4th and 14th

Amendments and by 42 U.S.C § 1983.


27.     Defendants and each of them willfully and knowingly violated and deprived

Plaintiff of a right secured by the Constitution of the United States in violation of 42 U.S.C.

Section 1983, specifically depriving Plaintiff of his right to be free from unreasonable police

action, and depriving Plaintiff of his liberty without due process of law. Defendant Officers had

no reason to search the trunk of the car, had no reason to "stop" the plaintiff who was briefly

stopped so that a friend would get inside the car and defendants never told Plaintiff to move the

car. Defendants had no reason to tell the occupants of the vehicle to get out of the vehicle nor did

they have reasonable cause to search them to begin with.


## AS FOR A SECOND CAUSE OF ACTION

28.     Plaintiff repeats and realleges paragraphs 1 through 27 as if each paragraph is

repeated verbatim herein.


29.     Plaintiff was maliciously charged with a felony in violation of plaintiff's right to

be free from malicious prosecution protected by the 4th and 14th Amendments and by 42 U.S.C. §

1983. Defendant Police Officers knew at the scene that the gun that was in the trunk of the car

was a prop gun used in movies and shows, that it was not a gun within the meaning of the

criminal law, that it was inoperable and incapable of being used as a "weapon" and understood

what the gun was for and what its use was for but still arrested Plaintiff and others and charged

Plaintiff with felony gun possession in addition to the arresting officers' stated knowledge that

the gun did not belong to Plaintiff. The officers knew that there was no conceivable way Plaintiff

could be successfully prosecuted for gun possession but still charged him with it anyway and

charging him with felony gun possession was callous and malicious in the circumstances and

entitles Plaintiff to punitive damages.

### AND AS FOR A THIRD CAUSE OF ACTION

30.     Plaintiff repeats and realleges paragraphs 1 through 29 as if each paragraph is

repeated verbatim herein.

31.     Plaintiff was subjected to strip search at Central Booking as well as at Rikers

Island although he was not charged with a drug crime and there was no reason to suspect or

believe that he was carrying any drugs or  secreting any drugs in his person and that a strip search

would have been necessary to discover such.

32.      The circumstances under which the Police came in contact with Plaintiff and the

place of that encounter gave the City of New York and its agents no indication that Plaintiff was

involved in a drug offense, was arrested for a drug offense, was charged with a drug offense or

had anything to suggest that a strip search of Plaintiff would lead to the discovery of any type of

contraband material.

33.     Federal judges have ruled the City of New York has been in violation of arrestees (like Plaintiff's) right to privacy by subjecting them to strip searches when there was no reason to suspect that drugs would be found or where the circumstances of the arrest did not suggest a drug crime.

34.     Although the Federal Courts had repeatedly found the City's action unconstitutional, the fact that Plaintiff was still subjected to a strip search under the circumstances shows that the City is grossly negligent in failing to properly train and instruct its employees to act constitutionally when it comes to the strip search of individuals arrested.

35.     The doctrine of res ipsa loquitur applies because if the City had properly trained or taken corrective actions to stop the wholesale strip searching of arrestees irrespective of the circumstances of the arrest, properly put in corrective action at Central Booking and at Rikers Island, Plaintiff would not have been strip searched. The City knew that a lot of people were still being arrested and subjected to strip searches and did not take proper actions to stop the reoccurrences of such illegal and unconstitutional actions and its recklessness and gross negligence emanated from a policy that it had adopted but failed to quickly change when it was held unconstitutional and its failures and inactions /failure to take appropriate actions has caused Plaintiff damages.

36.     The City of New York is therefore liable to Plaintiff for the violation of his

constitutional right to privacy when he was subjected to many strip searches because the City

failed to design, implement and supervise appropriate corrective actions and failed to discipline

relevant officers and supervisors when appropriate for not implementing any corrective actions.


### AND AS FOR A SIXTH CAUSE OF ACTION

37.     The violations of Plaintiff's constitutional rights and of Federal Law as

herein enumerated by Defendant Police Officers and each of them, were carried out under the

following policies, customs, and practices of Defendant City of New York:

I.     Failure to establish, publish, and instill in New York City Police Officers

the practical meaning of probable cause or reasonable cause for arresting a citizen or charging a

citizen with a crime so that officers would not detain, arrest, and/or charge citizens based on their

hunches, inklings, or mere suspicion and without reasonable or probable cause;

ii.     De-emphasizing the importance of an arrest warrant issued by a Judge

or Magistrate, which would act as a buffer between the citizenry and the Police, and encouraging

the Police under the aggressive policing policy of the Giuliani and Bloomberg administrations to

arrest first and ask questions later;

iii.     Failing to take proper corrective and punitive actions against

overreaching police officers and creating the impression that crime reduction is paramount and

triumphs over constitutional rights in all circumstances;

iv.  Authorizing stop and frisk, which mandates the stopping and frisking of

hundreds of thousands of individuals each year who have not committed any crimes and have not

been suspected of committing any crimes, a policy which is unconstitutional on its face, that allows police officers to stop and frisk individuals, especially minorities, when they have not been suspected of committing any crimes, and this policy established and implemented by the City was directly responsible for the arrest and prosecution of Plaintiff in this case.

38.     Under 42 U.S.C. § 1983, Defendant City of New York is jointly and severally liable with Defendants Police Officers and each of them for the general and specific damages Plaintiff sustained, as well as for the attorneys' fees and the costs and disbursements of the action.

39. As a result of the actions of the Defendants, Plaintiff lost his employment as contractor who supplied security guards to various businesses from which he made a very good living and which he was building up to be a thriving successful business and was unemployed for approximately  two and a half years and currently makes at least $30,000.00 (thirty thousand dollars) each year less than what he was making before his arrest, imprisonment and prosecution which caused him the loss of his employment. Plaintiff is continuing to sustain loss of income and would continue to do so for the foreseeable future and believes that he would never be able to have another opportunity to build a successful business as a contractor suppling security guards to various businesses.

WHEREFORE, Plaintiff prays the Court for judgment as follows:

**For each of the constitutional and statutory violations hereinabove complained of:**

    i.      general and compensatory damages in an amount that would adequately compensate Plaintiff for the violation of his rights and for his physical, emotional, and mental distress – against all Defendants, jointly and severally;

    ii.     specific damages in the amount that it cost Plaintiff to defend himself in Court as a result of Defendants' actions – against all Defendants, jointly and severally;

    iii.    specific damages for the income that he lost, is losing and would lose as a result of Defendants' actions – against all Defendants, jointly and severally;

    iv.    punitive damages in an amount sufficient to punish the individual Defendants and deter others like them from repeating such unlawful conduct – against the individual Defendants, jointly and severally;

    v.     attorneys' fees and the costs and disbursements of this action – against all Defendants, jointly and severally; and

    vi.    such other relief as the court deems just and proper.

Dated:   Brooklyn, New York
             April 26, 201`

OFODILE & ASSOCIATES, P.C.
Attorneys for Plaintiff Jemel Norman


By:  _____S/b_____
ANTHONY C. OFODILE, ESQ., (AO8295)
498 Atlantic Ave.
Brooklyn, NY 11217
Tel. No.:  (718) 852-8300